CARMEN A. TRUTANICH, City Attorney (SBN 86629x)
GARY G. GEUSS, Chief Assistant City Attorney
CORY M. BRENTE, Assistant City Attorney
CRAIG J. MILLER, Deputy City Attorney (SBN 138302)
200 North Main Street
City Hall East, 6th Floor
Los Angeles, CA 90012
Telephone No.: (213) 978-8722
Facsimile No.: (213) 978-8785
Email: craig.miller@lacity.org

*Attorneys for Defendants* JULIO BENAVIDES, and MARIO FLORES

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT CONTRERAS,<br><br>  Plaintiff,<br><br>vs.<br><br>CITY OF LOS ANGELES; JULIO BENAVIDES; MARIO FLORES; and DOES 1 - 10, Inclusive,<br><br>  Defendants. | Case No. CV11-01480 SVW (SHx)<br>*Hon. Stephen V. Wilson; Crtm 6*<br><br>**DEFENDANTS' TRIAL BRIEF AND STATEMENT OF OUTSTANDING ISSUES**<br><br>TRIAL:   SEPTEMBER 18, 2012<br>TIME:    9:00 A.M.<br>PLACE    Courtroom 6 |

TO THIS HONORABLE COURT AND PLAINTIFF AND HIS ATTORNEYS OF RECORD:

COME NOW Defendants, with a **TRIAL BRIEF AND STATEMENT OF OUTSTANDING ISSUES** for trial. As of the writing of this brief Defendants are still not certain of the scope of the case regarding:

1.  What evidence will be admissible regarding life expectancy?

   A) Will Plaintiff be permitted to claim a life expectancy up to 75 years for economic purposes even if he is not seeking damages "for his diminished life expectancy?

   B) Will the jury be permitted to determine the life expectancy of Plaintiff without "expert" testimony?

2. What is the scope of Dr. Mohandie's testimony regarding his psychological diagnosis of Plaintiff?

3. What evidence will be permitted regarding Plaintiff's efforts to mitigate his damages?

4. Will the court bar any non-disclosed supplemental opinions and/or references to medical reports, demonstrative evidence or events which were not disclosed and/or where the records are not provided?

Taking each in turn, Defendants state:

## 1. WHAT EVIDENCE WILL BE ADMISSIBLE REGARDING LIFE EXPECTANCY?

Both sides are submitting for the court's consideration a version of CACI 3932 regarding Plaintiff's claim for life expectancy. The disputed issue between the parties is what evidence is the court going to permit regarding the "factors" listed in the instruction such as person's health, habits, activities, lifestyle and occupation.

The main issue surrounds Plaintiff's past and present use of marijuana, past use of cocaine and Plaintiff's criminal history and anti-social behavior. Plaintiff contends that Plaintiff's life style and habits are irrelevant and more prejudicial than probative. He is claiming such activities are being presented as a character "assassination."

Such topics are not being offered for such purposes. Clearly the wording of this instruction alone makes those considerations relevant. If there are "prejudicial actions", Plaintiff is the source of the prejudice by his lifestyle decisions to smoke marijuana, use cocaine and engage in anti-social behavior. Who he associated and associates with, who provides him his illegal cannabis, can lead to be in a position where he is involved and funding unlawful conduct. If Plaintiff is not buying the drugs himself, he is manipulating other persons to do unlawful acts for him. Because Plaintiff is choosing to seek damages (both for pain and medical expenses) for the rest of his life, these topics become probative.

Plaintiff is the source of any inconsistent history regarding this use of marijuana. However, based upon his Rancho Los Amigos records he is still using marijuana on a

regular basis. Evidence of a person's habit is not inadmissible under FRE rule 406 to show person's routine practice. The medical records establish that to this day, Plaintiff is self medicating by using marijuana.

Despite California's Compassionate Use Act (Health and Safety Code section 11362.5) which de-criminalized medical marijuana, the use and possession of marijuana remains a violation of Federal law (21 USC 812 (b)(1), Marijuana is a schedule 1 drug.). Furthermore, for Plaintiff to be within the parameters of California's Compassionate Use Act, he would need a recommendation from a physician. See H & S 11362.5(b)(1)(B). Plaintiff's medical records do not show such a recommendation has been given and Plaintiff has not disclosed the name of a physician who gave him a recommendation. If Plaintiff was lawfully using medical marijuana then why did he refuse to discuss the issue during his deposition?

**A)  Will Plaintiff be permitted to claim a life expectancy up to 75 years for economic purposes even if he is not seeking damages "for his diminished life expectancy?**

Plaintiff filed a brief stating he was not seeking damages for diminished life expectancy. Does this mean Plaintiff is waiving seeking of any economic damages up to age 75?

In the context of calculating future life expectancy, the life expectancy is based upon "the expectancy of the injured person's life at the time of the tort." *Fein v. Permanente Medical Group* (1985) 38 cal 3d 137, 153.( "On his prospective earnings for the balance of his life expectancy at the time of his injury undiminished by any shortening of that expectancy as a result of the injury.") Based upon the appendix to the CACI instructions at the time of the incident Plaintiff was 19 years old and had a life expectancy of 56 years. However, based upon information relied upon by two physicians in this case a spinal cord injured person, who becomes injured at age 20, would have a 41 year remaining life expectancy from the date of incident. (This would mean an approximate 34 year life expectancy as time of trial.)

Defendants need to have the court determine, for the purposes of calculating damages, if Plaintiff is going to be able to present evidence or argument that Plaintiff should be compensated for his economic losses and pain until age 75. If so, what evidence will Plaintiff be permitted to present to prove that Plaintiff will probably live that long?

Defendants contend that there is evidence for the jury to consider which shows that Plaintiff may not live even to the 41 years. This is based upon his past and present history of smoking of cigarettes, smoking of marijuana, his anti-social personality disorder, the potential for non-compliance with his medical advisors and the potential for drug interaction and difficulty in determining dosage due to "self medication" with marijuana. At the time of the tort, Plaintiff was committing a heinous felony, running from the police, was high on drugs and associating with people who were shooting rival gang members. His past up to that date indicated a psychological and social disposition to do so. These are lifestyle and activity factors which surely bear on life expectancy.

**B. Will the jury be permitted to determine the life expectancy of Plaintiff without "expert" testimony?**

Defendants contend that the issue of life expectancy is one for the jury and can be made without "expert opinion." Life expectancy is a question of fact for the jury. Allen v. Toledo, 109 Cal. App. 3d at p. 424.

In the case of *Kawamura v. Honek* 127 cal app 509 (1932), Plaintiff did not make his case clear by testimony as to his age, his health, his family history or by the introduction of life tables, etc. Nevertheless these factors were relevant in the determination of his probable life expectancy. The court noted " It is obvious that the jury could take the testimony given them, including its own view of respondent and his demeanor, and with the aid of common knowledge approximate the latter's age and life expectancy. That such common knowledge can be used by jurors, not to supply testimony, but to make the testimony received intelligible, is supported by much authority."

In *Francis v. Sauve* 222 Cal. App. 2d 102, 121-22(1963), "Defendant complains that plaintiffs produced no evidence of the decedent's life expectancy but left the question

entirely to the jury's speculation." The court held "Mortality tables are admissible to assist the jury but they are not indispensable. ( Dallas v. De Yoe (1921) 53 Cal.App. 452, 457 [200 P. 361]; Atchison, T. & S. F. Ry. Co. v. Hughes (1895) 55 Kan. 491 [40 P.919, 923].) It has been held, for example, that, absent mortality tables, the trier of fact may still approximate the life expectancy of a statutory beneficiary who appeared in court. Kawamura v. Honek (1932) 127 Cal.App. 509, 511 [16 P.2d 150]; Rickards v. Noonan (1940) 40 Cal.App.2d 266, 274 [104 P.2d 839].) In Dallas v. De Yoe, supra, the court applied this rule to the decedent, although it indulged in the presumption "that a person is in average normal health, in the absence of evidence to the contrary." We think that the principle enunciated by these cases is that the question of life expectancy is a factual one for the jury and that in the absence of mortality tables they may evaluate this factor on the basis of the evidence in the record."

      Plaintiff's seem to be contending under the case of *Fisher v. United States*, (2010) 2010 US Dist. Lexis 108237 that there needs to be some expert evidence to establish a diminished life expectancy. In *Fisher*, the district court ruled that Defendant's proposed life expectancy expert Dr. Kush could not testify. The court held that Dr. Kush's methodology was not based upon reliable principals or method, based upon insufficient data and a failure to apply his principles and methods in a reliable manner. In *Fisher*, Dr. Kush was a budding expert witness. It was shown that he rather randomly chose negative factors in Plaintiff's life style, such as obesity and diabetes, and created a mathematic calculation to state that Plaintiff would not live as long as stated in the life expectancy table. Dr. Kush did not account for the important factors such as diet and exercise. Dr. Kush actually attempted to place a numerical value on the diminished expectancy. As the court disallowed Dr. Kush's testimony, the trier of fact then relied upon the published table.

      Defendants are not contending or attempting to present an expert who will say to a mathematical probability that Plaintiff will lose X years of his life expectancy. Defendants are contending that a jury is permitted to evaluate all the factors in Plaintiff's physical and psychological make up which bear upon life expectancy. Ultimately, the jurors as the triers

of fact can determine what weight they give to each factor, if they give any weight at all. The jurors are being asked to use their common experience to evaluate if Plaintiff's smoking, smoking marijuana, lack of exercise and anti-social personality disorder will probably reduce his life expectancy.

2. **WHAT IS THE SCOPE OF DR. MOHANDIE'S TESTIMONY REGARDING HIS PSYCHOLOGICAL DIAGNOSIS OF PLAINTIFF?**

Plaintiff's repeated attempts to malign and undermine a qualified expert are warranted and disingenuous. Plaintiff did not designate an expert to rebut Dr. Mohandie's psychological diagnosis or the methodology he used to reach his conclusion. Plaintiff is vigorously trying to exclude and discredit Dr. Mohandie because frankly his testimony hurts Plaintiff's case. Such a result does not make Mohandie's testimony either prejudicial or diminish its probative value.

To the extent Plaintiff criticizes Dr. Mohandie for not having an interview with Plaintiff or not testing him, these criticism are not based upon any alleged misapplication of psychologic methodology. In fact Dr. Mohandie states the diagnosis of anti-social personality disorder is based upon an analysis of behavior. Furthermore, in September 2011 at Rancho Los Amigos, Charlotte Sykora, PhD., interviewed and tested Mr. Contreras. (The record was marked as exhibit 315, pgs. 123-126 for the first phase of trial. It was also attached to offer of proof filed Sept. 6 as exhibit 7.) She opined, "With patient life history, he is at risk of having antisocial personality traits, but none were observed during this interview." Thus, a psychologist who actually interviewed Mr. Contreras saw the same personality traits which Dr. Mohandie opines that Plaintiff has and which lead him to conclude that Plaintiff had the antisocial personality disorder.

Dr. Mohandie opines based upon medical literature that a person with antisocial personality disorder is at risk for a lowered life expectancy. He does not attempt to put a numerical value on how much shorter Plaintiff's life will be. Plaintiff does not present any evidence or rebuttal information that the assertion about a shortened life expectancy is not medically/psychologically valid, reliable or lacks foundation. To the extent Plaintiff did not

probe this topic or ask specific hypothetical questions about his opinion during Mohandie's deposition do not mean that his opinions are inadmissible. To the extent Plaintiff contends he is not physically capable of engaging in dangerous behaviors because he is confined to a wheel chair, this is a question for trial. Ultimately, the jury will decide the weight they give to Dr. Mohandie's opinions and if Plaintiff's life style on the date of incident led him to have a shorter life expectancy.

Plaintiff has presented no valid reasons to exclude Dr. Mohandie's opinions. His opinions are probative and based upon a proper psychological foundation. His method of diagnosis is based upon reliable methods being applied in a reliable manner. His reliance on the DSM IV TR is proper and provides ample scientific data to support the opinions.

3. **DEFENDANTS ARE ENTITLED TO HAVE THE COURT READ A MITIGATION OF DAMAGES INSTRUCTION**

Plaintiff is his memorandum of contentions of law and fact appears to be contending that the issue of mitigation of damages is an affirmative defense. Plaintiff cites to no case law or statute for this proposition. Perhaps that is because there is an obligation for Plaintiff to mitigate damages and then the burden shifts to Defendants to show that there were not reasonable efforts and the costs to do so were not unreasonable.
The issue of mitigation of damages is more of a doctrine, rather than an affirmative defense.

In the case of *Green v. Smith* 261 Cal App 2d 392, 396, the court stated:

"It has been the policy of the courts to promote the mitigation of damages. (Citations omitted) The doctrine applies in tort, wilful as well as negligent. (Citation omitted) A Plaintiff cannot be compensated for damages which he could have avoided by reasonable effort or expenditures. (Citations omitted) The frequent statement of the principle in the terms of a 'duty' imposed on the injured party has been criticized on the theory that a breach of the 'duty' does not give rise to a correlative right of action. (Citation omitted) It is perhaps more accurate to say that the wrongdoer is not required to compensate the injured party for damages which are avoidable by reasonable effort on the latter's part. ( Citations omitted) As Judge Friendly observed in Ellerman Lines, Ltd. v. The President Harding,

1 supra, at p. 290, the current phraseology of the principle may lead to sounder results than
2 its statement in terms of a 'duty.'

3       The doctrine does not require the injured party to take measures which are
4 unreasonable or impractical or which would involve expenditures disproportionate to the
5 loss sought to be avoided or which may be beyond his financial means."

6       In this case Defendants contend that Plaintiff would be further along in his recovery
7 if he had availed himself to opportunities to rehabilitate himself. Plaintiff while in prison,
8 was offered at no cost to him, opportunities to start transfer training and to sit up right,
9 rather than laying in bed. This is not to say that Plaintiff could have reversed/altered his
10 tetrapalegia, but to show that Plaintiff did not use reasonable efforts to make himself better.
11 The jury can evaluate if Plaintiff will actually comply with his current suggested medical
12 program or if he will refuse. If Plaintiff refuses to get his physical therapy, for example, then
13 he should not be able to recover for additional damages if he needs extra mechanical aids
14 or hired help because he chooses not to do his exercises.

15       Here, Defendants are requesting the court read to the jury a standard pattern
16 instruction for the Ninth Circuit, Instruction 5.3. There is nothing in the comments of this
17 instruction or in the similar state instruction CACI 3930 which support a claim that the
18 doctrine needs to be pled as an affirmative defense in order to get the instruction read to the
19 jury.

20 **4.   THE COURT MUST BAR ANY NON-DISCLOSED SUPPLEMENTAL**
21     **OPINIONS AND/OR REFERENCES TO MEDICAL REPORTS OR EVENTS**
22     **WHICH WERE NOT DISCLOSED AND/OR WHERE THE RECORDS ARE**
23     **NOT PROVIDED**

24       Unfortunately on the eve of the second phase of trial it appears that Defendants have
25 not been provided with all the information, particularly medical, on which Plaintiff is
26 basing his claims. As recently as an expert deposition taken on Monday September 10, 2012,
27 it sounded as if Plaintiff was asking questions about a recent hospitalization at County USC.
28 ///

1  The records from USC have not been provided. County USC has not be identified as a
2  health care provider for Plaintiff in any disclosures.
3       Furthermore, Defendants have pestered Plaintiff to provide any additional reports
4  from Plaintiff's experts on which more recent opinions may be based. Defendants were
5  informed that Plaintiff was seeing Dr. Fisk and nurse Holacwicz during the week of
6  September 3, 2012. Because Plaintiff has undergone a surgical procedure and commenced
7  physical therapy, it is likely his medical needs have changed. To the extent Defendants were
8  able they obtained records from Rancho Los Amigos via a subpoena, they did so.
9  Defendants' experts supplemented their reports based upon the additional data. Plaintiff has
10 been provided with these updated reports. A third party, unlike a party is under no obligation
11 to update their responses as further information becomes available. Plaintiff has identified
12 Rancho as a provider of services but has not presented records during this litigation.
13       Plaintiff in his amended exhibit list identified the following:

| | |
|---|---|
| | Diagram dated of injuries dated 09/03 |

| |
|---|
| [ID ONLY] Rule 26 Report of H. Ronald Fisk, M.D. – Original and Supplemental |
| [ID ONLY] Rule 26 Report of Marianne Inouye – Original and Supplemental |
| [ID ONLY] Rule 26 Report of Elizabeth Holakiewicz – Original and Supplemental |
| Demonstrative Evidence For Plaintiff's Experts: Medical Equipment, Anatomical Models and Photographs of Medical Equipment |
| Family Photographs; Photographs of Plaintiff before shooting |
| Photographs of Plaintiff's scars |
| Video footage of Plaintiff performing daily activities |
| RPM Nighthawk Preliminary Report dated 9/3/2005 |

   Defendants requested Plaintiff provide them with these documents. Plaintiff's failure to provide these documents prevents Defendants from preparing for trial. Without the exhibits Defendants cannot determine if objections are warranted.

   Based upon the concession during pre-trial proceedings Defendants assume "Video footage of Plaintiff performing daily activities" is the "Day in the Life video" which Plaintiff withdrew. If this assumption is not accurate, then Defendants do not know to what video Plaintiff is referring.

   As noted above Defendants are not sure which are the expert reports to which Plaintiff is referring.

   Regarding "Demonstrative Evidence For Plaintiff's Experts: Medical Equipment, Anatomical Models and Photographs of Medical Equipment" without further explanation or actually being provided with photographs, Defendants cannot consult their experts or receive any explanation about the device(s) in question. Furthermore, such references to demonstrative evidence were not made in Plaintiff's initial disclosures, supplemental disclosures or attached to the expert reports provided in December 2011. (Plaintiff provided initial disclosure November 30, 2011, first supplemental disclosures December 2, 2011, second supp. December 29 and supplemental on Jan. 20, 2012) These items where requested in Request for Production served in September 2011. Therefore, there is a clear violation of Rule 26 to the extent Plaintiff seeks to use such items to support a claim.

   Plaintiff is his witness list stated the names or initials of :

1. Irma Payan*
2. Marisol Torres*
3. Myra Contreras*
4. T.V. (minor)*
5. I.R. (minor)*.

   Defendants have consistently asked for an explanation of who these individuals are and what their area of testimony will be. Plaintiff has not provided any explanation. Defendants are aware that Irma Payan is Plaintiff's mother, but do not what relevant

testimony she could add in the damage phase as limited by Plaintiff. Without adequate disclosures Defendants contend they will be surprised at trial and cannot prepare for cross-examination. Without any information to distinguish the testimony, Defendants expect the testimony of family members to be emotional and cumulative.

At some point all the potential evidence to be used at trial should already be in the hands of Defendants. Reasonably the time for production was prior to the pre-trial conference. Plaintiff is clearly aware of his legal obligations to provide an explanation of witness testimony and to provide documents. Yet no such information or documents have been provided. The court exclude Plaintiff's requests to put on such evidence as that is the proper result under Rules 26 and 37.

## 5. CONCLUSION

Although the court has been diligently conducting pre-trial proceedings, unfortunately seminal issues still remain. Defendants seek the court issue rulings addressing these issues so that trial preparation may be finalized.

DATED: September 11, 2012      Respectfully submitted,

CARMEN A. TRUTANICH, City Attorney
GARY G. GEUSS, Chief Assistant City Attorney
CORY M. BRENTE, Assistant City Attorney

By: _____/S/_____
CRAIG J. MILLER, Deputy City Attorney

*Attorneys for Defendants* JULIO BENAVIDES and MARIO FLORES

11