1  LAW OFFICES OF DALE K. GALIPO
   Dale K. Galipo, Esq. (Bar No. 144074)
2  Email: dalekgalipo@yahoo.com
   Thomas C. Seabaugh, Esq., (Bar No. 272458)
3  Email: tseabaugh@galipolaw.com
   21800 Burbank Boulevard, Suite 310
4  Woodland Hills, California  91367
   Telephone:   (818) 347-3333
5  Facsimile:    (818) 347-4118

6  William L. Schmidt. Esq. (Bar No. 206870)
   Email: bschmidt@ncinternet.net
7  377 W. Fallbrook, Suite 207
   Fresno, California 93711
8  Telephone:   (559) 261-2222
   Facsimile:    (559) 436-8163

9

10  *Attorneys for Plaintiff Robert Contreras*

11

12                 UNITED STATES DISTRICT COURT

13              CENTRAL DISTRICT OF CALIFORNIA

14  | ROBERT CONTRERAS | Case No. CV11-01480 SVW (SH) |
15  | Plaintiff, | *The Honorable Stephen V. Wilson* |
16  | vs. | **NOTICE OF MOTION AND MOTION FOR ATTORNEY'S FEES AND COSTS PURSUANT TO 42 U.S.C. § 1988** |
17  | CITY OF LOS ANGELES; JULIO BENAVIDES; MARIO FLORES; and DOES 1-10, inclusive, | |
18  | | |
19  | Defendants | *[Declarations of Danilo Becerra;John Burton;John C. Fattahi; Dale K. Galipo; Milton C. Grimes;Paul L. Hoffman; Donald G. Norris; Melanie Partow; Hilary L. Rau; William L. Schmidt; Thomas C. Seabaugh; Richard Vasquez; and attached exhibits filed concurrently herewith]* |
20  | | |
21  | | |
22  | | |
23  | | Date:        February 25, 2013 |
24  | | Time:        1:30 p.m. |
25  | | Ctrm:        6 |
26
27
28

**TO DEFENDANTS AND THEIR ATTORNEYS OF RECORD HEREIN:**

**PLEASE TAKE NOTICE** that on February 25, 2013 at 1:30 PM or as soon thereafter as this motion may be heard in the above-entitled Court, Plaintiff Robert Contreras will move this Court for an Order awarding reasonable attorney fees and costs pursuant to 42 U.S.C. Section 1988 and Federal Rule of Civil Procedure 54(d).

Plaintiff will request that the Court award attorney's fees in the amount of $922,118.50. Plaintiff will further request that the Court award expenses in the amount of $85,548.98. Finally, Plaintiff will request that the Court award attorney's fees for work performed in connection with the instant motion for attorney fees, including after these papers are filed, as will be set forth in the reply papers.

This Motion is based on the grounds that the Plaintiff was the prevailing party at trial on his civil rights claim and is entitled to attorney fees as a matter of law. This Motion will be further based on this Notice of Motion, the attached Memorandum of Points and Authorities, the concurrently filed declarations, the attached exhibits, upon the pleadings on file herein, and upon such other oral and documentary evidence as may be presented at the time of the hearing.


DATED:  January 22. 2013          LAW OFFICES OF DALE K. GALIPO


                              _____ /s/ Thomas C. Seabaugh _____
                              Dale K. Galipo
                              Thomas C. Seabaugh
                              Attorneys for Plaintiff Robert Contreras

NOTICE OF MOTION AND MOTION FOR ATTORNEY'S FEES AND COSTS
PURSUANT TO 42 U.S.C. § 1988

1
## <u>TABLE OF CONTENTS</u>

2  I.    INTRODUCTION ....................................................................................6

3  II.   LEGAL STANDARD ............................................................................7

4      A.    Legislative History of 42 U.S.C. § 1988 ............................................7

5      B.    The Supreme Court's standard in *Hensley v. Eckerhart*....................8

6  III.  ANALYSIS..............................................................................................10

7      A.    Plaintiff as the prevailing party is entitled to attorney's fees..............10

8      B.    The Court should be guided by a "lodestar" computation. ................10

9      C.    The relevant legal community governs reasonable rates. ...................11

10         1.    Hourly Rate for Dale K. Galipo, Esq. .............................................12

11         2.    Hourly Rate for Thomas C. Seabaugh, Esq.....................................14

12         3.    Hourly Rate for Hilary Rau, Esq. ..................................................16

13         4.    Hourly Rate for Richard Vasquez, Esq. .........................................18

14         5.    Hourly Rate for John C. Fattahi, Esq. ...........................................18

15         6.    Hourly Rate for William L. Schmidt, Esq. ....................................20

16         7.    Hourly Rate for Melanie Partow, Esq...........................................21

17     D.    The number of hours claimed is reasonable.......................................23

18     E.    Plaintiff is entitled to fees for litigating the instant

19           motion. ............................................................................................25

20     F.    Reasonable out-of-pocket litigation costs are recoverable

21           under 42 U.S.C. § 1988. ..................................................................25

22  IV.   CONCLUSION.......................................................................................26

23

24

25

26

27

28

# TABLE OF AUTHORITIES

Cases

*Blum v. Stenson*
465 U.S. 886 (1984)...................................................................................11

*Bouman v. Block*
940 F.2d 1211 (9th Cir. 1991) ...................................................................9

*Brewster v. Dukakis*
786 F.2d 16 (1st Cir. 1986) ........................................................................9

*City of Burlington v. Dague*
505 U.S. 557 (1992)...................................................................................11

*City of Riverside v. Rivera*
477 U.S. 561, 581 (1986) ............................................................................9

*Clark v. City of Los Angeles*
803 F.2d 987 (9th Cir. 1986)....................................................................25

*Ellwest Stereo Theatre, Inc. v. Jackson,*
653 F.2d 954 (5th Cir. 1981) ......................................................................8

*Farrar v. Hobby*
506 U.S. 103 (1992)...................................................................................10

*Gates v. Deukmejian*
987 F.2d 1392 (9th Cir.1992).....................................................................12

*Glass v. Pfeffer*
849 F.2d 1261 (10th Cir. 1988).................................................................25

*Guam Society of Obstetricians & Gynecologists v. Ada*
100 F.3d 691 (9th Cir. 1996)......................................................................9

*Hensley v. Eckerhart,*
461 U.S. 424 (1983)...........................................................................8, 9, 10

*Hernandez v. George*
793 F.2d 264 (10th Cir. 1986)...................................................................25

*Hernandez v. Kalinowski*
146 F.3d 196 (3rd Cir. 1998) ....................................................................25

*L.H., et. al. vs. Schwarzenegger*
645 F.Supp.2d 888 (E.D. Cal.2009)  .........................................................12

*Lund v. Affleck*
587 F.2d 75, 77 (1st Cir.1978) ..................................................................25

*Odima v. Westin Tucson Hotel*
53 F.3d 1484 (9th Cir. 1995)......................................................................9

<u>Cases (cont.)</u>

*Serrano v. Unruh*
   32 Cal.3d 621 (1982) ............................................................9

*Sethy v. Alameda County Water Dist.,*
   602 F.2d 894 (9th Cir. 1979) ...............................................8

*Texas Teachers v. Garland School Dist.*
   489 U.S. 782 (1989) ..........................................................10

*Trevino v. Gates*
   99 F.3d 911 (9th Cir. 1996)................................................11

*Trustees of Const Industry, etc. v. Redland Ins. Co.*
   460 F.3d 1253 (9th Cir. 2006) ...........................................25

*United Steelworkers of Am.v. Phelps Dodge Corp.,*
   896 F.2d 403, 407 (9th Cir. 1990) .....................................12

*Ustrak v. Fairman*
   851 F.2d 983 (7th Cir. 1988)..............................................10

<u>Other Authorities</u>

42 U.S.C. § 1988...............................................................7, 8

Federal Rule of Civil Procedure 54(d) ...............................7

S. Rep. No. 94-1011, 94th Cong. 2d Session ......................8

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

The verdict of September 21, 2012 marked the culmination of an extensive campaign to vindicate the constitutional rights of Plaintiff Robert Contreras.  In the course of litigation, Plaintiff's case attracted significant public concern and attention, and his victory was widely reported in the media.

Robert Contreras ("Plaintiff") brought the instant action against Defendants City of Los Angeles and Los Angeles Police Department Officers Julio Benavides and Mario Flores ("Defendants") (Doc. No. 1) on February 17, 2011.  Plaintiff claimed, *inter alia*, that he was subjected to excessive force in violation of the Fourth Amendment when defendant police officers shot him repeatedly in the back on the night of September 3, 2005, causing permanent quadriplegia and a lifetime of painful disability.  *Id*.

This was a complex case vigorously defended by the City of Los Angeles. From the outset, an internal investigation by the city, which Plaintiff's attorneys were compelled to carefully study and examine, had already endorsed the officers' actions.  Meanwhile, the officers emphatically insisted that Plaintiff had pointed a gun at them and that they had shot him in self-defense.  The jury ultimately rejected the conclusions of the investigation and the testimony of the officers in light of the physical evidence: no gun was ever found, and the bullets entered Plaintiff's back.

On December 19, 2011, the Court bifurcated the liability and damages phases of Plaintiff's excessive force claim. A three-day jury trial was held on Plaintiff's excessive force claim, and the jury found in favor of Plaintiff on February 2, 2012. (Dckt. 97).  Following the first phase of trial, the parties' attorneys agreed to settle the matter for $4.5 million. This settlement was based on defense experts' opinions that Plaintiff's future medical care alone would cost at least $3.8 million. However, despite recommendations from defense counsel, the relevant city authorities

NOTICE OF MOTION AND MOTION FOR ATTORNEY'S FEES AND COSTS
PURSUANT TO 42 U.S.C. § 1988

1   subsequently rejected the settlement.  On September 21, 2012, after another three-

2   day jury trial, the jury awarded Plaintiff $4.5 million for the present value of future

3   costs of medical care and $1,225,000 for past and future physical pain, for a total of

4   $5,725,000 (Doc. No. 193).

5       Litigating police misconduct cases requires experience and an understanding

6   of issues that are unique to civil rights victims as compared to general civil practice.

7   Even experienced civil rights attorneys have difficulty overcoming the built-in bias

8   favoring the police on the part of many jurors.  Given that lawsuits to vindicate

9   constitutional rights are in the public interest, Congress passed 42 U.S.C. Section

10   1988 to encourage attorneys to undertake such otherwise difficult and unprofitable

11   cases. This statute allows recovery of reasonable attorneys' fees to attorneys who

12   prevail in Section 1983 cases.

13       The favorable trial result in this case on Plaintiff's civil rights claims was the

14   product of a tremendous amount of hard work on the part of Plaintiff's counsel in

15   preparing and presenting this case at trial.  Because Plaintiff prevailed on his civil

16   rights claims, he is entitled to an award of reasonable attorney fees pursuant to

17   Federal Rule of Civil Procedure 54(d) and 42 U.S.C. § 1988.  Itemizations of the

18   requested attorneys' fees have been filed concurrently herewith.

19       The reasonableness of plaintiffs' fee request is supported by declarations of

20   Danilo Becerra, John Burton, John C. Fattahi, Dale K. Galipo, Milton C. Grimes,

21   Paul L. Hoffman, Donald G. Norris, Melanie Partow, Hilary L. Rau; William L.

22   Schmidt, Thomas C. Seabaugh, and Richard Vasquez, and the exhibits attached

23   thereto, which are filed concurrently herewith and incorporated herein by reference.

24   **II.    LEGAL STANDARD**

25      **A.    Legislative History of 42 U.S.C. § 1988**

26       The Civil Rights Attorney's Fees Awards Action of 1976, codified as 42

27   U.S.C. § 1988, was enacted to encourage competent counsel to undertake and

28   enforce civil rights cases. That law provides in relevant part as follows:

> In any action or proceeding to enforce a provision of
> sections 1981, 1981(a), 1982, 1983, 1985 and 1986 of this
> title, title IX of Public Law 92-318, [or]…title VI of the
> Civil Rights Act of 1964, the court, in its discretion, may
> allow the prevailing party, other than the United States, a
> reasonable attorney's fees as part of the costs…

The legislative history of § 1988 indicates that the public policy behind awarding fees pursuant to § 1988 was to induce competent counsel to undertake civil rights litigation by assuring them that if they were successful in vindicating federally protected rights, they would be paid in the same manner as "is traditional with attorneys compensated by feepaying clients," even when the results obtained are entirely non-pecuniary or solely of nominal pecuniary value. *See* Legislative History of Section 1988, S. Rep. No. 94-1011, 94th Cong. 2d Session, reprinted in 1976 U.S. Code Cong. & Ad. News 5908.

Given this purpose, courts have long established that although the statute appears to speak in permissive terms, a court's discretion to deny attorney's fees to a successful civil rights litigant is "exceedingly narrow." *See, e.g., Ellwest Stereo Theatre, Inc. v. Jackson*, 653 F.2d 954, 955 (5th Cir. 1981). "Congress plainly intended that successful plaintiffs should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Sethy v. Alameda County Water Dist.*, 602 F.2d 894, 897 (9th Cir. 1979) (quotation marks omitted).

### B.   The Supreme Court's standard in *Hensley v. Eckerhart*

In *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983), the Supreme Court held that the purpose of 42 U.S.C. § 1988 is to ensure effective access to the judicial process for persons with civil rights grievances. The public policy considerations behind § 1988 have been reiterated in many cases. The courts have repeatedly held that attorneys in civil rights suits are entitled to recover their full fees and costs if they achieve meaningful and substantial relief, even if they do not prevail on every

NOTICE OF MOTION AND MOTION FOR ATTORNEY'S FEES AND COSTS
PURSUANT TO 42 U.S.C. § 1988

theory or against every party. *Bouman v. Block*, 940 F.2d 1211, 1237 (9th Cir. 1991) (plaintiff proceeding under multiple theories for sex discrimination and prevailing on FEHA claims entitled to recover attorneys' fees). As the Supreme Court explained, "[l]itigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters." *Hensley*, 461 U.S. at 435. If the rule were otherwise, attorneys would be discouraged from taking on high risk cases such as this one. Id.; *see also Odima v. Westin Tucson Hotel*, 53 F.3d 1484, 1499 (9th Cir. 1995); *Serrano v. Unruh*, 32 Cal.3d 621 (1982); *Guam Society of Obstetricians & Gynecologists v. Ada*, 100 F.3d 691, 700 (9th Cir. 1996) (plaintiffs cannot be faulted for their thoroughness in pleading related claims).

A fully compensatory fee is one that encourages the vindication of constitutional and statutory rights through recovery of all costs and time spent on the case, calculated at private market rates. It must ensure that attorneys are paid for all the time they devote to the litigation. It is not limited by the number of causes of action on which relief is awarded, or the amount of damages recovered. *See City of Riverside v. Rivera*, 477 U.S. 561, 581 (1986). Parsing discrete issues according to their relative importance or outcome is disfavored because doing so would require the trial court to make mini-determinations of prevailing party status on each dispute. *See Brewster v. Dukakis*, 786 F.2d 16, 18 (1st Cir. 1986). Once a plaintiff has been determined to be the prevailing party, he is entitled to all reasonable time spent:

Where "the plaintiff's claims of relief . . . involve a common core of facts or [are] based on related legal theories," so that "much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis, . . . the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours

1  reasonably expended on the litigation." *Ustrak v. Fairman*, 851 F.2d 983, 988 (7th
2  Cir. 1988) (quoting *Hensley*, 461 U.S. at 435 (1983)).

3  **III.   ANALYSIS**

4      **A.   Plaintiff as the prevailing party is entitled to attorney's fees.**

5      A plaintiff is considered a prevailing party, and may recover attorney's fees,
6  if he succeeds on any significant issue in litigation that achieves some of the benefit
7  sought in bringing the suit. *Hensley,* 461 U.S. at 433. The Supreme Court in *Texas*
8  *Teachers v. Garland School Dist.* 489 U.S. 782, 792 (1989) expressly held that
9  *Hensley* sets forth the appropriate test for determining a plaintiff's prevailing party
10  status. In determining whether a plaintiff has succeeded on any significant issue in
11  litigation, the *Garland* Court looked at whether the relief on the merits of plaintiff's
12  claim changes the legal relationship between plaintiff and defendant. Applying this
13  test, the Court in *Farrar v. Hobby,* 506 U.S. 103, 114 (1992), held that a money
14  judgment in favor of the plaintiff for any amount modified the defendant's behavior
15  in a way that benefits the plaintiff by forcing the defendant to pay an amount that
16  would otherwise not be paid.

17      Here, Plaintiff prevailed on all claims presented to the jury and were awarded
18  significant monetary damages.  The jury awarded Plaintiff $4.5 million for the
19  present value of future costs of medical care and $1,225,000 for past and future
20  physical pain, for a total of $5,725,000 (Doc. No. 193).  This Court has entered an
21  enforceable judgment against Defendants and in favor of Plaintiff.  Plaintiff is
22  clearly the prevailing party in the litigation.

23      **B.   The Court should be guided by a "lodestar" computation.**

24      The object of judicial fee determination is to simulate the results that would
25  be obtained if the lawyer were dealing with a paying client. The starting point in
26  achieving that objective is a determination of the "lodestar." The "lodestar" is the
27  product of hours reasonably expended on the case multiplied by the customary
28  hourly rates generally prevailing in the relevant community for services rendered by

similarly qualified attorneys. *Henlsey v. Eckhart*, 461 U.S. 424 (1983). Under current law, the United States Supreme Court has sought to make uniform the manner of determining what a "reasonable fee" is under a fee-shifting statute such as '1988.  *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992).  As a general proposition, the Court adopted the position that "the 'loadstar' figure has, as its name suggests, become the guiding light of our fee-shifting jurisprudence. We have established a '*strong presumption*' that the lodestar represents a 'reasonable' fee . . ." *Id.* (emphasis added).

### C.    The relevant legal community governs reasonable rates.

In determining an attorney's reasonable hourly rate, "the court should be guided by the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Trevino v. Gates*, 99 F.3d 911, 925 (9th Cir. 1996) (internal quotations omitted).  "[T]he proper reference point in determining an appropriate fee award is the rates charged by private attorneys in the same legal market as prevailing counsel . . . ." *Id.* (citing *Blum v. Stenson*, 465 U.S. 886, 895 (1984)).

The Los Angeles Daily Journal recently published a table entitled, "Average Law Firm Billing Rates" for three California metropolitan areas as well as nationally.  This table, attached as Exhibit A to the Declaration of Dale K. Galipo ("Galipo Decl.), and further discussed in the Declaration of John C. Burton ("Burton Decl.") includes the following figures:

| Location | Position | 2012 | 2011 | Percent Increase |
|----------|----------|------|------|------------------|
| Los Angeles | Partner | $797 | $766 | 4.0% |
| | Associate | $550 | $516 | 6.6% |
| San Diego | Partner | $568 | $568 | 0% |
| | Associate | $394 | $378 | 4.2% |

| San Francisco | Partner | $675 | $654 | 3.2% |
|---|---|---|---|---|
| | Associate | $482 | $449 | 7.3% |
| National | Partner | $750 | $725 | 3.4% |
| | Associate | $495 | $460 | 7.5% |

Galipo Decl., Ex. A.  In *L.H., et. al. vs. Schwarzenegger*, 645 F.Supp.2d 888, 893 (E.D. Cal.2009), the court noted that "the relevant legal community is that in which the forum district is located" (citing *Gates v. Deukmejian*, 987 F.2d 1392, 1405 (9th Cir.1992), and that a reasonable rate should reflect not only the market rates, but the skill and experience of the prevailing party's counsel.

"Affidavits of the plaintiffs' attorney… and rate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate." *United Steelworkers of Am.v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990).  The hourly rates for each of the attorneys who worked on the case are addressed in detail below:

### 1.    Hourly Rate for Dale K. Galipo, Esq.

With respect to Mr. Galipo's request of $800 per hour, his declaration and the supporting declarations attest to his accomplishments as a civil rights trial attorney.

Mr. Galipo graduated with a B.B.A. from the University of Michigan in Ann Arbor, Michigan in 1981.  He attended law school at UCLA from 1981 to 1984. Galipo Decl. ¶ 7. Since 1991, he has managed his own law firm specializing in major personal injury and wrongful death cases and criminal defense.  *Id*. ¶ 8.  Due to his experience in personal injury and criminal defense law and his significant trial experience, prosecuting civil rights actions involving police misconduct causing serious injury or death was a natural transition for him. *Id.*

Mr. Galipo has tried in excess of one hundred fifty civil cases through verdict, including civil rights trials, medical malpractice cases, and a variety of serious personal injury cases.  *Id.* ¶ 9. He has won the majority of his civil jury trials.  He

has had numerous seven figure verdicts, including verdicts for $8.1 million (*Guha v. Regents*); $6.3 million (*Schulman v. City of Burbank*); $4.5 million (*Cotton v. City of Eureka*); $4 million dollars (*Mitchell v. County of Los Angeles*); and $3.2 million (*P.C. v. City of Los Angeles*). *Id.*

Mr. Galipo has also tried approximately fifty criminal felony cases including several homicide cases, attempted murder cases, robbery cases, and three strikes cases. *Id.* ¶ 10. He has also won the majority of my criminal trials, including winning five homicide cases and numerous three-strike cases. During one stretch from 1995 to 1996, Mr. Galipo won six felony trials in a row including two homicides, two robberies, and two three-strikes cases. For multiple victories in three strikes cases, the Daily Journal dubbed me "The Strikes Man." In June of 2005, I won an acquittal in a jury trial in a homicide case (*People v. Robert Vaughn*). My client, Robert Vaughn, the co-founder of Von Dutch Clothing Company, was accused of homicide. Mr. Vaughn admitted to the shooting, but claimed it was done in self- defense. The jury acquitted my client in approximately three hours. I also prevailed in a homicide case in July of 2010 on the issue of self-defense. *Id.* A list of some of Mr. Galipo's accomplishments in civil rights cases in the last twenty five months is included in his declaration at paragraph 11.

Mr. Galipo specializes in police misconduct civil rights litigation and takes on very difficult liability cases that require expertise in this area of law. Id. ¶ 12. He has been asked to speak at seminars on several occasions on various topics of civil rights litigation before the federal bar association. *Id.* He is routinely called for consultation by various civil rights attorneys throughout the state with regard to his opinions and input on civil rights cases. *Id.* In January of 2011, he was one of the speakers and a civil rights symposium sponsored by the University of La Verne Law School. *Id.* In addition, he was recently awarded the Defender of the Constitution Award by the Inland Empire Chapter of the Federal Bar Association. *Id.* He was also nominated as a "superlawyer" for the year 2013. *Id.*

Mr. Galipo worked diligently on this case for over two years.  The extensive number of hours he worked on this case precluded him from accepting other employment opportunities. Id. ¶ 13.  Based on the difficulty of this case and the skill, experience and ability necessary to prevail on this case, an hourly attorney fee rate for Mr. Galipo's services under the circumstances should be $800 per hour. Id. ¶ 14.

Mr. Galipo was recently awarded the "lodestar" rate of $700 per hour by Magistrate Judge Paul Abrams for his work in the case of *P.C. v. City of Los Angeles*.  Id. ¶ 18.   Mr. Galipo is requesting $800 per hour based on his accomplishments as a civil rights attorney and trial lawyer, as well as the fact that a recent article in the Los Angeles Daily Journal indicated that average law firm partner billing rates in Los Angeles average $797 per hour.  *Id.*; Ex. B.  Given that Mr. Galipo has his own law firm for 22 years, and has over 150 jury trials, he has more trial experience and expertise than the average law firm partner in Los Angeles.  *See* Galipo Decl. ¶ 19; Ex. B.

## 2. Hourly Rate for Thomas C. Seabaugh, Esq.

A reasonable fee for the work Mr. Seabaugh performed on this case is at least $350 per hour.  See Galipo Decl., ¶ 17; Burton Decl., ¶¶ 12-15; Declaration of Donald G. Norris ("Norris Decl."), ¶¶ 9-12.

Not including the time spent on the instant motion, Mr. Seabaugh has spent 192.6 hours of billable time in connection with tasks reasonably necessary to the favorable resolution of this action. Declaration of Thomas C. Seabaugh ("Seabaugh Decl.") ¶ 2.  The billable time spent in connection with this motion will be set forth in a Plaintiff's reply to the instant motion. *Id.* ¶ 3.

Mr. Seabaugh has been the associate with primary responsibility for the day-to-day management of this case from July 2012 through the present. *Id.* ¶ 4. His work on this case included handling motions in limine, preparation of trial briefs and pretrial documents, briefing of pre-trial issues, formulation of trial strategy,

preparation of trial witnesses, trial preparation, post-trial motions, and drafting the instant motion for attorneys' fees. *Id.* He contemporaneously tracked his time in tenth of an hour increments, exercised billing judgment, excluded unproductive time and time spent on administrative or clerical tasks. *Id.* A chart containing his contemporaneous time records is attached as an exhibit to Mr. Seabaugh's declaration. *Id.*; Ex. A.

Mr. Seabaugh was admitted to the California Bar in December 2010. Seabaugh Decl. ¶ 5. Mr. Seabaugh received his bachelor's degree in May 2005 (in philosophy, with honors) from the University of Notre Dame, which he attended on a scholarship. *Id.* ¶ 6. He received his J.D. degree from the University of Michigan Law School in May 2010, which he also attended in part on a scholarship. *Id.* ¶ 7. At the University of Michigan Law School, he was awarded the Certificate of Merit for outstanding academic performance by the dean of the law school. *Id.*

During the summers between classes at the University of Michigan, Mr. Seabaugh worked as a judicial clerk for the Honorable Paul J. Komives in the US District Court for the Eastern District of Michigan, where his responsibilities included drafting decisions and orders of the court. *Id.* ¶ 8. During the summer of 2008, he worked in the Commercial Disputes Group of Henry Davis York, a top law firm in Sydney, Australia, where was involved an international capital markets case against Lehman Brothers. *Id.* While at the University of Michigan, Mr. Seabaugh completed numerous legal research projects, receiving research credit in at least one published article. *Id.* ¶ 9.

In May 2012, Mr. Seabaugh left a promising career in business law to pursue a career in civil rights. *Id.* ¶ 12. While at Norris & Galanter LLP, his work was billed to clients at a rate of $220. *See* Norris Decl., ¶¶ 9-12. During the period since he accepted his current position at the Law Offices of Dale K. Galipo, Mr. Seabaugh has gained substantial experience in civil rights litigation in all its aspects,

NOTICE OF MOTION AND MOTION FOR ATTORNEY'S FEES AND COSTS
PURSUANT TO 42 U.S.C. § 1988

from case evaluation through to trial.  Seabaugh Decl. ¶ 12.  He has personally handled summary judgment motions; mediation and settlement negotiations; depositions of witnesses, including experts; motions at all stages, including oral argument; trial preparation; and he has worked alongside Mr. Galipo as a second-chair attorney at trial.  *Id.*  Mr. Seabaugh has also personally handled the appeal to the Ninth Circuit Court of Appeals in *Krechman v. County of Riverside, et al* (Case No. 12-55347), the briefing for which has been completed.  *Id.*  Mr. Seabaugh is currently responsible for day-to-day management of approximately fifteen federal civil rights cases, in most of which the alleged civil rights violation has resulted in death.  *Id.*

In addition to this case, Mr. Seabaugh is currently the associate with primary responsibility for the day-to-day handling of two civil rights cases in particular that have received significant local and national media attention:  *McDade v. City of Pasadena* (CV12-02892 DMG), which involves the police shooting of an unarmed 19-year-old student; and *Alarcon v. City of Los Angeles* (Case No. CV09-04210 CBM), which involves the caught-on-video falsification of police reports by police officers later convicted of perjury and conspiracy to obstruct justice.  *Id.* ¶ 13.

In light of the above, the Court should award Plaintiff attorneys' fees for the work performed by Mr. Seabaugh at the rate of at least $350 per hour.

### 3.     Hourly Rate for Hilary Rau, Esq.

Attorney Hilary L. Rau spent a total of 203.1 billable hours in connection with this litigation.   Ms. Rau was the handling associate on this case from July 2011 until she left the Law Offices of Dale K. Galipo in July 2012 to take a position as a litigation associate at another plaintiff's firm.  *See* Declaration of Hilary L. Rau ("Rau Decl.") ¶ 2. Ms. Rau's work on this case included propounding and discovery; drafting motions in limine, oppositions, trial briefs and pretrial documents; opposing Defendants' post-trial Motion to Dismiss; and second-chairing

1   the liability phase of trial.  After July 2012, Ms. Rau continued to assist with this

2   case by drafting motions in limine and pretrial documents for the damages phase of

3   trial.  *Id.*  ¶¶ 2-3.  Ms. Rau was also responsible for opposing Defendants' post-trial

4   motion for new trial based on alleged errors in the evidentiary rulings during the

5   liability phase of trial.  *Id.*  ¶ 2.

6         Ms. Rau graduated from UCLA School of Law in 2010, where she was Senior

7   Editor for the UCLA Journal of Environmental Law and Policy and spent a semester

8   as a judicial extern to the Honorable Christina Snyder of the United States District

9   Court for the Central District of California.  *Id.*  ¶ 4. During the summer of 2009,

10  Ms. Rau worked as a law clerk at the Los Angeles County Office of Independent

11  Review, where she assisted staff attorneys in reviewing Internal Affairs

12  investigations into allegations of misconduct and excessive force by members of the

13  Los Angeles Sheriff's Department.  *Id.*  ¶ 4.  After graduating from UCLA School

14  of Law, Ms. Rau worked at the Center for Governmental Studies where she

15  conducted legal and policy research relating to election law and campaign finance

16  reform.  Ms. Rau's work at the Center for Governmental studies included co-

17  authoring an *amicus curiae* brief to the United States Supreme Court and two

18  published policy reports.  *Id.*  ¶ 5.

19        Ms. Rau worked at Law Offices of Dale K. Galipo from April 2011 until July

20  2012.  *Id.*  ¶ 6.  Between July 2011 and July 2012, Ms. Rau was responsible for day-

21  to-day management of approximately ten federal civil rights cases, with a particular

22  emphasis on law and motion work and pretrial preparation.  Three of the cases to

23  which Ms. Rau was assigned—*Jones v. County of San Bernardino*, *P.C. v. City of

24  Los Angeles* and this case—resulted in jury verdicts in favor of the plaintiffs.  *Id.*  ¶

25  6. Ms. Rau left the Law Offices of Dale K. Galipo in July 2012 in order to accept a

26  position as a litigation associate at The Schlehr Law Firm, P.C.  Ms. Rau primarily

27  practices plaintiff-side employment litigation with an emphasis on cases involving

28

unlawful employment discrimination. *Id.* ¶ 7. Based on Ms. Rau's experience and qualifications to practice federal civil rights litigation, a reasonable fee for her professional services is $285 per hour.

### 4. Hourly Rate for Richard Vasquez, Esq.

A reasonable fee for the work staff attorney Richard Vasquez performed on this case is $200 per hour. Galipo Decl. ¶ 18. Mr. Vasquez is a graduate of the University of California Riverside and Southwestern Law School, and he was admitted to the California Bar in December 2010. Declaration of Richard Vasquez ("Vasquez Decl.") ¶ 2. As of today's date, Mr. Vasquez has spent 82.5 hours of time in connection with tasks reasonably necessary to the favorable resolution of this action. *Id.* ¶ 3; Ex. A. His work on this case included document review, client contacts, and other support services. *Id.* ¶ 3. He attended many of the depositions taken in this case as well as the Independent Medical Examination. *Id.* He met several times with Plaintiff and his family in order to discuss his case. *Id.* He also participated in different meetings with Mr. Galipo and the other attorneys to discuss this case as it progressed. *Id.*

Plaintiff is not requesting fees for time Mr. Vasquez spent on administrative or clerical tasks. Plaintiff is only requesting an award of attorney's fees for a fraction of the time Mr. Vasquez spent working on the case. From the time that Mr. Vasquez started working in the Law Offices of Dale K. Galipo, until the time of trial, Mr. Vasquez worked solely on the Contreras case. Id. ¶ 4. He attended the first phase of trial, but he is not requesting fees for his attendance at the trial. Id. He is further not requesting time spent on phone conversations or meetings with Mr. Contreras. Accordingly, a reasonable hourly rate for Mr. Contreras is $200.

### 5. Hourly Rate for John C. Fattahi, Esq.

A reasonable fee for attorney John C. Fattahi's professional services in this case is $400 per billable hour. Mr. Fattahi spent 30.2 hours of billable time assisting with the opposition of Defendants' post-trial motion on statute of limitations

grounds and was responsible for opposing Defendants' post-trial motion for judgment as a matter of law pursuant to Rule 50(b) on the basis of qualified immunity.  Declaration of John C. Fattahi ("Fattahi Decl.") ¶ 2.  Mr. Fattahi graduated from UCLA School of Law in 2006, where he was Senior Editor of the UCLA Law Review.  *Id.* ¶ 4.  Mr. Fattahi served for one year as a law clerk to U.S. District Judge Virginia A. Phillips in the Central District of California, then was employed as a litigation associate by the law firm of Quinn Emanuel Urquhart & Sullivan, LLP in Los Angeles, California.  *Id.* ¶ 4.  At Quinn Emanuel, Mr. Fattahi's rate for paying litigation clients was $365 per billable hour.  *Id.* ¶ 4; Ex. A (Declaration of Eric J. Emanuel).  While billing at this rate, the type of work Mr. Fattahi performed consisted largely of document review, propounding and responding to written discovery, drafting pleadings, motions practice, and attending depositions.  *Id.* ¶ 4.  While at Quinn Emanuel, Mr. Fattahi worked on cases of comparable complexity to the instant federal civil rights action, including breach of contract and insurance coverage disputes.  *Id.* ¶ 4.  Mr. Fattahi also litigated a prisoner lawsuit as a member of the Central District of California's pro bono civil rights panel.  *Id.* ¶ 4.  Mr. Fattahi has been involved with federal civil rights litigation for six years, and has been almost exclusively practicing police excessive force litigation for four years.  *Id.* ¶ 4.

        In February 2009, Mr. Fattahi left his partnership-track position at Quinn Emanuel in order to join the Law Offices of Dale K. Galipo, where he almost exclusively practiced plaintiff's civil rights litigation until July 2011.  *Id.* ¶ 4.  With regard to civil rights litigation in federal court, Mr. Fattahi has had primary responsibility for the drafting of at least 30 complaints, the taking of at least 100 depositions, the opposition of at least 20 motions for summary judgment, and the preparation of pretrial documents in at least 25 cases.  *Id.* ¶ 4.  Mr. Fattahi has second-chaired several federal civil rights jury trials, obtaining success more than 50 percent of the time, and has served as lead trial counsel in a federal civil rights jury

trial in the Central District of California entitled *Harrison v. Tilton et al.*, resulting in a plaintiff's verdict. *Id.* ¶ 4. For work performed in 2009–2010 on a police shooting case, U.S. Magistrate Judge Paul L. Abrams of the Central District of California awarded Mr. Fattahi the hourly rate of $320 by (*P.C. v. City of Los Angeles,* No. CV 07-3414-PLA). *Id.* ¶ 3. Mr. Fattahi currently operates a solo practice with an emphasis on police civil rights litigation, and his standard hourly rate for litigation set forth in all of his fee agreements since March 2012 is $400 per billable hour. *Id.* ¶ 4. Based on the hourly rate actually paid by Mr. Fattahi's litigation clients, and his experience and qualifications to practice federal civil rights litigation, a reasonable fee for his professional services in this case is $400 per billable hour. If statutory attorneys' fees were not available in cases such as this, Mr. Fattahi would not be able to represent clients such as the plaintiff in pursuit of remedies for violations of fundamental constitutional rights. *Id.* ¶ 4.

### 6.    Hourly Rate for William L. Schmidt, Esq.

A reasonable fee for attorney William L. Schmidt's professional services in this case is $400.00 per billable hour. Mr. Schmidt spent 223 hours of billable time bringing this case to trial since its inception in August 2010. Declaration of William L. Schmidt ("Schmidt Decl.") ¶¶ 2-3; Ex. A. The hours expended average out to less than 2 hours per week since the case was accepted.

Mr. Schmidt is an attorney duly licensed to practice law in all federal and state courts in the State of California, including the Ninth Circuit Court of Appeals, and the Southern, Central, Eastern, and Northern United States District Courts of California. Schmidt Decl. ¶ 1. He was admitted to the California Bar in June 2000. Schmidt Decl. ¶ 2. Since June 2000, Mr. Schmidt has worked tirelessly to secure the rights of incarcerated persons through his law practice that focuses on cases involving post-conviction matters, civil rights violations, and prison law. Mr. Schmidt's efforts have resulted in several published opinions. Schmidt Decl. ¶ 4.

1    Mr. Schmidt's involvement in this case spans this case's entire life span.

2  Schmidt Decl. ¶ 5. In fact, initially Mr. Schmidt was the only attorney willing to

3  undertake Mr. Contreras' case despite Contreras' contacting at least a dozen other

4  attorneys.  *Id*.

5    When first retained, Mr. Contreras was incarcerated at California Men's

6  Colony in San Luis Obispo, California. Despite the distance, it was necessary for

7  Mr. Schmidt to travel to San Luis Obispo, and later Los Angeles, to meet with the

8  client and to attend depositions, court hearings and trial.  Schmidt Decl.¶ 6; Ex. B.

9  However, once Mr. Galipo joined the case, Mr. Schmidt made a concerted effort to

10  limit the amount of his attorneys' fees and costs; in fact, he only attended 3

11  depositions, 2 hearings, and the trial, keeping travel to a minimum.  *Id*. & Ex. B.

12    During the course of this litigation, Mr. Schmidt's work on this case included

13  reviewing Mr. Contreras' criminal and medical files, researching legal issues,

14  contacting experts regarding potential and existing legal issues, and communicating

15  my findings to Mr. Contreras and co-counsel.  Schmidt Decl. ¶ 7.  After Mr. Galipo

16  joined the case, Mr. Schmidt's primary responsibility was to confer with Mr. Galipo

17  about case strategy, keep Mr. Contreras updated about his case, research legal

18  issues, review plaintiffs and defendants' filings, and assist in preparation for trial.

19  *Id*.; Ex. A.  The work Mr. Schmidt did in this case was necessitated by the

20  aggressive strategy pursued by the defense, the complexity of government tort

21  litigation, and the difficult legal issues presented in this case. Schmidt Decl. ¶ 3.

22    Based on his twelve years of practicing law in the areas of post-conviction

23  criminal law, civil rights, and prison administrative law, a number of which have

24  resulted in published opinions, and the market rate for attorneys with similar

25  experience and training, a reasonable fee for Mr. Schmidt's professional services in

26  this case is $400.00 per billable hour.  If the statutory attorney's fees were not

27  available in Mr. Contreras' case and others like it, Mr. Schmidt would not have

28  represented Mr. Contreras in pursuit of remedies for violations of his fundamental

constitutional rights because of the expense of litigating cases of this complexity and difficulty.  Schmidt Decl. ¶ 5.

### 7.   Hourly Rate for Melanie Partow, Esq.

A reasonable hourly rate for attorney Melanie Partow is at least $415.  Ms. Partow is a 2004 graduate of Southwestern University School of Law.  Declaration of Melanie Partow ("Partow Decl.") ¶ 2.  She passed the July 2004 California Bar examination and was admitted to the Bar in 2006.  *Id.*  Ms. Partow earned a post-graduate degree in law from the University of Oxford in 2010.  She is also an adjunct Lecturer in Law at the University of Southern California, Gould School of Law.

Ms. Partow served as the law clerk to the Chief Prosecutor of the International Criminal Court, Luis Moreno-Ocampo, in the Hague, the Netherlands, where she assisted with the prosecutions of human rights violations.  *Id.* ¶ 3.  Ms. Partow began litigating civil rights cases in United States domestic courts in 2004 (first under the supervision of admitted attorneys and then as an Associate Attorney) with Schonbrun DeSimone Seplow Harris & Hoffman, LLP, where she worked for three years.  *Id.* ¶ 4.  She joined Helmer · Friedman, LLP as a Senior Associate Attorney in 2008, where she continued practicing civil rights litigation for an additional one and one-half years.  *Id.*

From 2009 to the present, Ms. Partow has worked as an Associate Attorney for the Law Offices of Dale K. Galipo.  *Id.* ¶ 5.  During this time, my practice has consisted almost exclusively of excessive force/police misconduct cases.  *Id.*  She has been and remains primarily responsible for 15-20 cases at a time.  *Id.*  She is currently the day-to-day attorney on no less than fifteen police misconduct/civil rights cases.  *Id.*

Since passing the bar in 2004, Ms. Partow has had eight years of continuous civil rights litigation experience.  *Id.* ¶ 6.  Her main areas of practice since becoming an attorney are: (1) constitutional/civil rights law, including police misconduct

cases; (2) international human rights law, including Alien Tort Statute cases; (3) employment law; (4) appellate law; and (5) civil tort litigation, including class action litigation. *Id.* Her litigation abilities and responsibilities pertain to all phases of litigation from client intake to post-trial motions and appeals. *Id.*

Ms. Partow has second-chaired multiple trials and successfully authored and argued appeals at the state and federal levels, including, *Beets, et al. v. County of Los Angeles, et al.,* Case No. 10-55036; *Mitchell, et al., v. County of Los Angeles, et al.*, Case No. No. 07-55206 (9th Cir.); the Petition for Rehearing in *Aldana, et al. v. Del Monte, et al*, Case No. 07-15471-B (11th Cir.); and the Petition for Rehearing in *Bauman, et al v. DaimlerChrysler Corp, et al.*, Case No. 07-15386 (9th Cir.), which was chosen for publication. *Id.* ¶ 7. She received publication credit for my authorship contributions to Steinhardt, Hoffman & Camponovo, INTERNATIONAL HUMAN RIGHTS LAWYERING: CASES AND MATERIALS (West: 2009). *Id.*

The work that Ms. Partow performed in order to prepare this matter for trial included defending the deposition of Plaintiff's Damages Expert, Dr. Fisk, and supervising, reviewing, and editing the work of less-experienced associates. *Id.* ¶ 8.

Ms. Partow's requested rate of $415 is reasonable and in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation. *See* Partow Decl. ¶ 14; Ex. A, B.

**D.    The number of hours claimed is reasonable.**

Plaintiffs' total basic lodestar fees, determined by multiplying the number of hours expended by the hourly rate of each attorney are as follows:

| Attorney | Rate | Hours | Total |
|---|---|---|---|
| Dale K. Galipo | $800 | 826.4 | $661,120.00 |
| Thomas C. Seabaugh | $350 | 192.6 | $67,410.00 |
| Hilary Rau | $285 | 203.1 | $57,883.50 |
| John Fattahi | $400 | 30.2 | $12,080.00 |

| | | | |
|---|---|---|---|
| Richard Vasquez | $200 | 82.5 | $16,500.00 |
| William L. Schmidt | $400 | 223.0 | $89,200.00 |
| Melanie Partow | $415 | 7.7 | $17,925.00 |
| | | Total: | $922,118.50 |

The extensive work undertaken by Plaintiff's counsel during the discovery process, in taking and defending numerous depositions, opposing the Defendants' many motions in limine, and all of the pretrial work necessary to bring this case to trial in both phases are listed in the compilation of time records attached to the declarations of the above attorneys. All times listed in the time records were reasonably spent in securing a successful outcome in this case.

A tremendous amount of research and writing went into this case.  Before the start of the second phase of trial, Plaintiff had filed a total of 11 motions in limine while Defendants had filed 13, not including oppositions, replies, trial briefs, and other supplemental briefing. The results speak for themselves. For example, on September 11, 2012, the Court granted nearly all of Plaintiff's motions in limine pending at that time, while denying nearly all of the motions filed by Defendants.

Prior to filing this motion, counsel have reviewed their records and exercised billing judgment and written off time spent on administrative or semi-clerical tasks, or tasks that were not sufficiently productive. Counsel have made their best efforts to exclude work that would not be billed to an ordinary fee-paying client. The action was litigated efficiently and expeditiously, without needless expenditure of time or unnecessary work as evidenced by the efficiency of the trial.

Police misconduct lawsuits advance the significant public benefit of deterring abuse by law enforcement officers who would otherwise operate free of any meaningful restraints. The decline of police beatings - "flashlight therapy" and other forms of naked brutality – in California over the last thirty years has been directly

NOTICE OF MOTION AND MOTION FOR ATTORNEY'S FEES AND COSTS
PURSUANT TO 42 U.S.C. § 1988

1  attributed to the emergency of the plaintiffs' police misconduct bar. The instant case
2  exemplifies that, but for competent willing counsel, police misconduct would have
3  gone without consequences in this instance.

4       **E.    Plaintiff is entitled to fees for litigating the instant motion.**

5          In addition to the attorney's fees derived from legal work performed in
6  preparing and litigating a case, Plaintiff is entitled to attorneys fees for their time
7  spent establishing their right to attorneys' fees in the amount requested.   *See Clark v.*
8  *City of Los Angeles*, 803 F.2d 987, 992 (9th Cir. 1986) ("We, like every other court
9  that has considered the question, have held that the time spent in establishing
10 entitlement to an amount of fees awardable under section 1988 is compensable.");
11 *see also Hernandez v. Kalinowski*, 146 F.3d 196, 199 (3rd Cir. 1998); *Glass v.*
12 *Pfeffer,* 849 F.2d 1261, 1266 (10th Cir. 1988); *Hernandez v. George*, 793 F.2d 264,
13 269 (10th Cir. 1986); *Lund v. Affleck*, 587 F.2d 75, 77 (1st Cir.1978) ("It would be
14 inconsistent with the purpose of the Fees Act to dilute a fees award by refusing to
15 compensate the attorney for the time reasonably spent in establishing and negotiating
16 his rightful claim to the fee.").  Plaintiff is also entitled to fees for time spent
17 opposing any post-trial motions by Defendants.

18         Plaintiff's counsel will include in the compilation of the total hours associated
19 with the instant motion, including a time estimate regarding preparation for and
20 appearance at oral argument on February 25, in his reply brief.

21      **F.    Reasonable out-of-pocket litigation costs are recoverable under 42**
22           **U.S.C. § 1988.**

23         It is well established that attorney's fees under 42 U.S.C. § 1988 include
24 reasonable out-of-pocket litigation expenses that would normally be charged to a fee
25 paying client, even if the court cannot tax these expenses as "costs" under 28 U.S.C.
26 § 1920.  *Trustees of Const Industry and Laborers Health and Welfare Trust v.*
27 *Redland Ins. Co.*, 460 F.3d 1253 (9th Cir. 2006).  Therefore, Plaintiff is entitled to

28

recover for reasonable out-pocket-expenses incurred in this litigation.  These are expenses that a client would normally pay but which were not taxed as costs; they are, therefore, compensable under 42 U.S.C. § 1988.

Plaintiff's out-of-pocket expenses included the cost of retaining expert witnesses.  Plaintiff incurred expert witness expenses including the following: $44,500 to Plaintiff's medical expert Dr. H. Ronald Fisk, M.D., Ph.D. (Galipo Decl. ¶ 22; Ex. D); $11,297.00 to Zingler & Inouye, LLC II for Plaintiff's expert economist Marianne Inouye (Galipo Decl. ¶ 23; Ex. E); and $27,703.66 to Liz Holakiewicz & Associates for Plaintiff's expert life care planner Liz Holakiewicz (Galipo Decl. ¶ 24; Ex. F).  Finally, the sum if of $2,048.32 was incurred by Mr. Bill Schmidt in travel related to this case.  Schmidt Decl. ¶ 5; Ex. B.  Accordingly, Plaintiff respectfully requests an award of expenses in the amount of $85,548.98.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court award attorney's fees in the amount of $922,118.50. Plaintiff requests that the Court award expenses in the amount of $85,548.98.  Finally, Plaintiff requests that the Court award him attorney's fees for work performed in the litigation of the instant motion for attorney fees, including after these papers are filed, as will be stated in the reply papers.

DATED:  January 22, 2013            LAW OFFICES OF DALE K. GALIPO


By_____/s/ Thomas C. Seabaugh_____
Thomas C. Seabaugh
Dale K. Galipo
Attorneys for Plaintiff Robert Contreras